James C. HUGHES and Ingabord Hughes d/b/a Austin Orthotic Center, Appellants,

v.

Dennis COLE, d/b/a Austin Prosthetics Center, Appellee.

No. 1270.

Court of Civil Appeals of Texas, Tyler.

July 19, 1979.

Rehearing Denied Sept. 9, 1979.

Bradley M. Bingham, Meurer & Bingham, Austin, for appellants.

David W. Nelson, McGinnis, Lochridge & Kilgore, Austin, for appellee.

MOORE, Justice.

Plaintiff, Dennis Cole, d/b/a Austin Prosthetics Center, brought suit against defendants, James C. Hughes and Ingabord Hughes, d/b/a Austin Orthotic Center, seeking damages for breach of contract. Plaintiff alleged that on September 23, 1974, a written contract was executed by the parties under the terms of which he agreed to allow defendants to share office space with him and to use his business name, Austin Prosthetics Center, in their practice of orthotics to be conducted under the business name of Austin Prosthetics Center, Orthotic Division. As consideration for the use of the trade name, goodwill and other trade name benefits, plaintiff alleged that the defendants agreed to pay him an amount equal to 15% of the taxable net income earned by the defendants in their orthotic business for a period of three and one-half years commencing on January 1, 1975, payable in semiannual installments. Plaintiff alleged that although the defendants had earned a sizable net income from their orthotic business, they refused to pay in accordance with the terms of the contract. Defendants answered with a general denial and specially denied that they were indebted to the plaintiff under the terms of the contract, except for the sum of $155.91 which they tendered into court as being 15% of their net taxable income from January 1, 1975, through June 30, 1975. Defendants further alleged that they were willing to pay plaintiff the amount stipulated by the contract until August 26, 1975, the date they allege plaintiff Cole terminated the agreement and moved to another location.

After a trial before the court sitting without a jury, the trial court entered judgment for the plaintiff for 15% of defendants' net taxable income for the three and one-half year period as stipulated in the contract and ordered the defendants to render an accounting to the plaintiff reflecting the amount of their net taxable income between January 1, 1975, and June 30, 1978. The judgment denied relief as to other claims asserted by the plaintiff and likewise denied the defendants any relief on their cross-action. Defendants duly perfected this appeal but limited the scope of the appeal to only that portion of the judgment which awarded the plaintiff a judgment for 15% of the net taxable income during the three and one-half year period stipulated in the contract.

Reformed and as reformed affirmed.

The evidence shows that in the early part of 1974, appellee, Dennis Cole, and appellant, James C. Hughes, met and began making plans for Hughes to move from San Antonio to Austin, Texas, for the purpose of opening an orthotics business in conjunction with Cole's practice of prosthetics. Shortly thereafter Hughes moved to Austin and the parties operated under an oral

agreement until September 23, 1974. The basic understanding underlying the agreement was that they would operate out of the same office, with appellee performing the prosthetics work of making artificial limbs and Hughes performing the orthotic work of making braces. Pursuant to the oral agreement the parties began operating under the business name of Austin Prosthetics Center, Orthotic Division. On September 23, 1974, the parties executed a written agreement under the terms of which Cole agreed to allow appellants to use his trade name, Austin Prosthetics Center, in conducting Hughes' orthotics work. As consideration for the use of Cole's business name, good will and other trade name benefits, appellant, James C. Hughes, agreed to pay appellee an amount equal to 15% of the taxable net income derived by Hughes through his work at the Austin Prosthetics Center, Orthotic Division. The evidence shows that Cole introduced appellant to members of the medical profession practicing in Austin who would be referring business to Hughes and also allowed Hughes to order materials and equipment under his charge account. Approximately six months after the parties began working together, serious disagreements developed in their business relationship, which disagreements also affected their personal relationship. Cole decided that he could no longer continue the business relationship, moved out and moved his business to a new location in Austin. Thereafter he commenced operating under the name of "Austin Prosthetics Center." Hughes continued to operate his business at the old location but changed the name of his business to "Austin Orthotic Center."

At the trial Cole admitted that he intended to terminate the business relationship when he left and moved to a new location. He also admitted that on August 26, 1975, he sent a large number of letters to physicians and patients notifying them that he had terminated his business relationship with Hughes. Omitting the formal parts, the letter reads as follows:

"I have found it necessary to terminate my business relationship with James Hughes and his Orthotic Division.

"Any representation which I may have made in the past in reference to his workmanship or his conduct is hereby withdrawn and I do no accept any responsibility in connection with his business operations in the future.

"As of September 1, 1975, Dennis Cole, Austin Prosthetics Center, will be located at 3913 Medical Parkway."

The evidence shows that after Cole demanded payment for the first semiannual installment due on June 30, 1975, Hughes rendered a statement to the appellee on September 10, 1975, showing that the net taxable income earned by the Orthotics Division amounted to $1,039.45 and tendered Cole the sum of $155.91 representing 15% of the net taxable income for the first semiannual installment. Cole refused to accept the payment. Thereafter he filed the present suit.

At the trial, appellant, James C. Hughes, admitted that he was obligated to pay Cole the 15% stipulated by the contract, beginning January 1, 1975, until Cole terminated the contract and moved out on August 26, 1975.

The pertinent parts of the contract (described as Exhibit "A") material to this appeal are as follows:

"THIS AGREEMENT entered into this 23 day of September, 1974, by and between Dennis Cole of Austin Prosthetics Center and Jim Hughes of Austin Prosthetics Center-Orthotic Division by which the parties agree as follows:

"1. Jim Hughes hereby agrees to pay to Dennis Cole fifteen (15%) percent of the taxable net income received by Jim Hughes through his work in the Austin Prosthetics Center, Orthotic Division, said payments to be made semi-annually beginning January 1, 1975 through July 1, 1978, with adjustments to be made annually at the end of each taxable year reflecting the actual net taxable income received. These payments are made in consideration of the benefits Jim Hughes will receive by use of the tradename, [sic]

Austin Prosthetics Center, and the Goodwill and other tradename [sic] benefits connected with the Austin Prosthetics Center which is owned and operated by Dennis Cole.

"Although Jim Hughes will be bound by this agreement and will be required to make semi-annual payments representing 15% of the taxable net income received from his work at the Austin Prosthetics Center, Orthotic Division, he is in no way bound by this Agreement to remain with this Center and perform his work through this Center."

Pursuant to the request of appellant, the trial court filed the following findings of fact: (1) The Agreement attached hereto as Exhibit "A" and made a part hereof by reference for all purposes, along with prior oral agreements made by Plaintiff and Defendants prior to the execution of Exhibit "A" represent the full agreement between the parties to this dispute; (2) The Agreement which gave rise to this cause of action, was in writing and signed by Jim Hughes, Defendant, and Dennis Cole, Plaintiff, and was binding upon both parties thereto; (3) The terms of this Agreement which gave rise to this cause of action included the requirement that Defendant JAMES C. HUGHES was to pay Plaintiff DENNIS COLE fifteen percent (15%) of the taxable net income received by Defendant JAMES C. HUGHES through his work in the Austin Prosthetics Center, Orthotic Division; (4) In exchange for the payment of fifteen percent (15%) of the net taxable income from JAMES C. HUGHES, operating as Austin Prosthetics Center, Orthotic Division to DENNIS COLE, d/b/a Austin Prosthetics Center, JAMES C. HUGHES received the use of the trade name, Austin Prosthetics Center, and the goodwill and other trade name benefits connected with the Austin Prosthetics Center; (5) Since the execution by Plaintiff and Defendant of Exhibit "A," Defendant JAMES C. HUGHES, d/b/a Austin Prosthetics Center, Orthotic Division, did in fact receive trade name benefits through the use of the name Austin Prosthetics Center, Orthotic Division along with other trade name and goodwill

benefits connected with his association with the Austin Prosthetics Center and his association with DENNIS COLE: (6) While on September 15, 1975 Defendants JAMES C. HUGHES and INGABORD HUGHES ceased to operate under Plaintiff's business name, Austin Prosthetics Center, other goodwill and trade name benefits associated with and accruing to Defendants through the association with Plaintiff continued to accrue to Defendants subsequent to the cessation of Defendants' operations under Plaintiff's business name; and (7) The terms of this Agreement which gave rise to this cause of action included the requirement that payments were to be made semiannually during the period January 1, 1975 through July 1, 1978, said payments representing fifteen percent (15%) of the net taxable income received by Defendants, JAMES C. HUGHES and INGABORD HUGHES and said payments having not been made pursuant to the terms of this Agreement. Based on the foregoing findings of fact, the trial court concluded that as a matter of law the plaintiff was entitled to judgment against defendants in the sum equivalent to 15% of the net taxable income derived by James C. Hughes and Ingabord Hughes through the operation of the Austin Prosthetics Center, Orthotic Division, and Austin Orthotic Center, Austin, Travis County, Texas, during the period from January 1, 1975, through July 1, 1978.

Appellants assert that the trial court erred in construing the contract to mean that the parties intended that the appellee, Dennis Cole, was entitled to receive 15% of the taxable net income earned by them after the appellee Cole had terminated the business relationship and moved his part of the business to another location. In reply appellee argues that the judgment must be sustained because language used by the parties in the second paragraph of paragraph 1 of the contract quoted above, compels the conclusion that appellants were required to make the semiannual payments of 15% of his taxable net earnings for three and one-half years irrespective of whether he remained with and performed his work through the Center or not.

Neither appellant nor appellee asserts any claim that the contract is ambiguous and it therefore becomes our duty to ascertain the intention of the parties from the written instrument itself without the aid of parol evidence. *Steeger v. Beard Drilling Co.*, 371 S.W.2d 684, 688 (Tex.1963); *Struller v. McGree*, 374 S.W.2d 256, 258 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.); *O'Boyle v. Dubose—Killeen Properties, Inc.*, 430 S.W.2d 273, 277 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.).

In our view there is not ambiguity in the contract when considered in all of its provisions. Therefore resort to aids in construction is unnecessary, and, indeed, not permissible. *Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (Tex.1951); *Steeger v. Beard Drilling Co., supra.*

In our view the written instrument in question is in the nature of a partnership contract. Under the terms of the agreement Cole was to allow Hughes to use his trade name, goodwill, and other trade name benefits. Hughes was to do the orthotic work and the parties were to share the taxable net income on the basis of 85% to Hughes and 15% to Cole. Contrary to appellee's contention, we do not believe the second paragraph of paragraph 1 of the contract had the effect of requiring appellants to make the semiannual payments for the full three and one-half years despite the fact that it was terminated after the expiration of eight and one-half months. Every partnership is prima facie a partnership determinable at the will of anyone of the persons who have entered into it unless it has been agreed that the contract would endure for a specific length of time. *Wright v. Ross*, 30 Tex.Civ.App. 207, 70 S.W. 234 (Tex.Civ.App.1910, writ ref'd); *Heathington v. Heathington Lumber Company*, 398 S.W.2d 822, 826 (Tex.Civ.App.—Amarillo 1966, no writ); 44 Tex.Jur.2d Partnership sec. 16, p. 335. Although Hughes bound himself by the terms of the agreement to make the semiannual payments derived from his work while at the Center, the agreement makes it clear that Hughes was in no way bound to remain at

the Center or work there for any specified period of time. There being no agreement that the business relationship would endure for any specific time, the partnership was determinable at the will of either party. When Cole elected to terminate the partnership the extent of the appellants' liability to Cole was 15% of their taxable net income which they earned at the Center from January 1, 1975, until the date of termination. The fact that appellants may have received some trade name and goodwill benefits after the partnership terminated would not have the effect of extending the agreement until June 30, 1978. Once the partnership agreement was terminated, neither party was any longer bound thereby.

As a general proposition, a contract, indefinite as to the time of its performance, may be terminated by either party by giving notice of or doing something sufficient to indicate to the other party an intention to do so. *Sawman Oil Co., Inc. v. Bush*, 136 S.W.2d 938, 940 (Tex.Civ.App.—El Paso 1940, no writ); 17A C.J.S. Contracts § 589, p. 1141; also see *Dunham v. Orange Lumber Co.*, 125 S.W. 89, 90–91 (Tex.Civ.App. 1910, no writ). The undisputed proof shows that Cole notified appellants, as well as the general public, that he had elected to terminate the agreement. Further, the acts and conduct of appellants was sufficient to establish that they likewise notified Cole that they intended to terminate the agreement.

Appellants concede that they are liable to the appellee for the stipulated payments until the time the agreement was terminated. Under the unchallenged findings made by the trial court, the contractual relationship ceased on September 15, 1975. Accordingly, the judgment will be reformed so as to award appellee, Dennis Cole, judgment for 15% of appellants' taxable net income from January 1, 1975, to September 15, 1975, rather than for the three and one-half year period awarded by the judgment. In all other respects the judgment is affirmed.

Reformed and as reformed affirmed.